# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Aaron A. Benner,

      Plaintiff,

v.

Saint Paul Public Schools, I.S.D. #625, and
Lisa Grunewald,

      Defendants.

Case No. 0:17-cv-01568-SRN-KMM

**ORDER**

In this employment action, Aaron Benner alleges that the Saint Paul Public Schools,

I.S.D. #625 ("SPPS" or "the District"), discharged him from his teaching position in retaliation

for his criticism of a "racial equity" policy aimed at preventing disproportionate suspensions for

students of color. On May 6, 2019, United States District Judge Susan R. Nelson issued a

Memorandum Opinion and Order granting in part and denying in part SPPS's motion for

summary judgment. [ECF No. 105.] In relevant part, Judge Nelson found that a jury must decide

Mr. Benner's retaliatory discharge claim under the Minnesota Whistleblower Act, and she denied

the SPPS's request that a reference to punitive damages in the Third Amended Complaint be

stricken. [*Id.* at 58–60, 70–71 & n.24.]

On June 24, 2019, Mr. Benner filed a motion to amend the scheduling order and to

amend the complaint, which is now before the Court. [ECF No. 112.] Mr. Benner asks the Court

to modify the schedule to allow him to bring a motion to amend the complaint even though the

applicable deadline has passed. Mr. Benner requests leave to amend to assert a claim for punitive

damages against the District for retaliatory discharge under the Minnesota Whistleblower Act.

The District opposes both requests, arguing that: (1) Mr. Benner has failed to demonstrate good

1

cause to allow an untimely motion to amend under Fed. R. Civ. P. 16; and (2) leave to amend should be denied because the District is immune from liability for punitive damages for Mr. Benner's retaliatory discharge claim under the Municipal Tort Claims Act, Minn. Stat. § 466.04.

As explained below, based on the unique circumstances of this case, the Court concludes that the motion to amend the complaint should be considered on the merits, even though it was filed after the applicable deadline in the scheduling order. The Court also concludes that the motion to amend the complaint should be granted.

## I. Motion to Amend the Scheduling Order

The initial Pretrial Scheduling Order set the deadline for filing non-dispositive motions, "including those which relate to ... leave to assert punitive damages (if applicable)" to be filed no later than April 6, 2018. [ECF No. 26 at 2 ¶ 6.] Pursuant to the parties' stipulations, the Scheduling Order was amended several times, and the deadline to file and serve non-dispositive motions was ultimately extended to September 6, 2018. [ECF No. 52.] On September 6, 2018, Mr. Benner filed a non-dispositive motion to compel discovery [ECF No. 56], but he did not file a motion related to punitive damages. Mr. Benner's pending motion to amend the complaint was not filed until June 24, 2019 [ECF No. 112], more than nine months after the relevant deadline passed. Because he filed the motion so long after the deadline, Mr. Benner asks the Court to modify the scheduling order to permit him to file his motion to amend the complaint now. SPPS argues that Mr. Benner has failed to demonstrate the required "good cause" for modifying the scheduling order because he has not shown that he was diligent in pursuing his motion to amend.

## A.     Relevant Procedural History

Whether the scheduling order should be modified depends on the litigation's procedural history. To make sense of that history, one must be familiar with a requirement of Minnesota law governing punitive-damages claims. Under Minn. Stat. § 549.191, sometimes referred to as the gatekeeping statute, a plaintiff is expressly forbidden from seeking punitive damages in her initial complaint. Instead, a plaintiff must later file a motion to amend that is accompanied by prima facie clear and convincing evidence that the defendant's conduct entitles the plaintiff to recover punitive damages. *Id.* Although courts in the District of Minnesota applied the gatekeeping statute's evidentiary standard for several years after the law was enacted in cases where a party's claim was based on Minnesota law, since July 2017, that practice has shifted. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5187832 (D. Minn. July 27, 2017) (concluding that the gatekeeping statute's standard governing amendment is inapplicable in federal court because it conflicts with the standards of Rule 15); *see also Shank v. Carleton College*, No. 16-cv-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018) (collecting cases). Now the courts in this District generally review motions to amend to add punitive-damages claims through the lens of Fed. R. Civ. P. 15.

Where a plaintiff pleads a claim based on federal law, there is no comparable prohibition on including a request for punitive damages in the initial complaint. *See Hunter v. Ford. Motor Co.*, No. 08-cv-4980 (PJS/JSM), 2010 WL 11537516 (D. Minn. Jan. 7, 2010) (reasoning that the plaintiff did not need to bring a motion to amend to add a claim for punitive damages arising out of her claims under federal statutes because she had already asserted such a claim). Indeed, Rule 8 requires a pleading to include only a short and plain statement of the claim showing that

the pleader is entitled to relief," and a "demand for the relief sought…." Fed. R. Civ. P. 8(a)(2)–(3).

Mr. Benner filed his original Complaint on May 11, 2017. He alleged only federal claims and included a request for punitive damages in his prayer for relief. [ECF No. 1.] When the District moved to dismiss the complaint for failure to state a claim on July 10, 2017, it made no argument concerning the propriety of the claim for punitive damages. [ECF No. 5.] Mr. Benner filed his first Amended Complaint on July 31, 2017, which he was permitted to do once as a matter of course under Fed. R. Civ. P. 15(a)(1)(B). [ECF No. 12.] Mr. Benner continued to ask that the District be required to pay punitive damages in his prayer for relief. [ECF No. 12.] Given that the first two iterations of Mr. Benner's pleading did not contain any state law claims, his general pleading of punitive damages presented no issue at the outset of the case.

Mr. Benner retained new representation in this case in December 2017, and his current counsel, Ashwin Madia, entered a notice of appearance on his behalf. [ECF No. 28.] With Mr. Madia on board, the parties stipulated to the filing of a Second Amended Complaint on January 31, 2018. [ECF No. 35 (Stipulation); ECF No. 37 (Second Am. Compl.).] The Second Amended Complaint included a claim based on the Minnesota Whistleblower Act and retained the previous general request for punitive damages. Several months later, the parties stipulated to the filing of a Third Amended Complaint on May 7, 2018. [ECF No. 43 (Stipulation); ECF No. 46 (Third Am. Compl.).] Again, the Third Amended Complaint included claims based upon the Minnesota Whistleblower Act and the punitive-damages request in the prayer for relief. In the parties' stipulations, a paragraph expressed the District's position regarding the viability of Mr. Benner's claims:

> Defendant has reviewed the proposed [Second and Third Amended Complaints] and contends that the new claims are unviable, but it believes that it will be more

efficient to challenge the new claims with the existing ones in its anticipated summary judgment motion than to oppose Plaintiff's request to amend the complaint at this time.

[ECF Nos. 35 & 43.] Neither stipulation specifically mentions the presence of the punitive-damages claim given the addition of the state law claims.

On August 31, 2018, about a week before the deadline for filing non-dispositive motions, Mr. Madia emailed defense counsel regarding a discovery dispute and inquiring whether SPPS would object to having Judge Nelson consider the propriety of punitive damages in the context of the summary-judgment briefing. [Madia Decl. (June 24, 2019), Ex. 1, ECF No. 115.] Mr. Madia stated:

> I'd like to file a motion to amend the complaint to add a claim for punitive damages on the Whistleblower Act claim (Count 3). Technically it's a non-dispositive motion and should be filed by Sep. 6. I'm happy to draft and file it along with our motion to compel next week. However, I think it may be more productive and cost-efficient for everyone to brief it and have it heard in accord with your summary judgment motion. Both motions are fact intensive and I think it would be productive to have the motions concurrently heard. Further, if SPPS wins on sj, then of course resolution of the punitives motion will be unnecessary.
>
> But again, I'm happy to file the punitives motion next week if you prefer. Please let me know your preference.

[*Id.* at 2.] In response, defense counsel stated that the motion should be treated as a non-dispositive motion, rather than being considered alongside the District's summary-judgment motion. [*Id.* at 1.] Mr. Benner filed a motion to compel on September 6, 2018, but he did not file a motion to amend the complaint to assert a punitive-damages claim in connection with the Minnesota Whistleblower Act claim.

SPPS filed its motion for summary judgment on December 21, 2018. In its memorandum supporting the motion, SPPS argued that Mr. Benner's punitive-damages claim had to be dismissed because he "did not move the Court for permission to amend the complaint to assert a

claim for punitive damages in violation of Minn. Stat. § 549.191….” [Def.’s Summ. J. Mem. at 34–25, ECF No. 75.] SPPS cited authority for the proposition that a punitive-damages claim can be stricken from a complaint asserting claims under Minnesota law where no motion under the gatekeeping statute was filed. [*Id.*] SPPS’s summary-judgment briefing did not argue that recovery of punitive damages against a municipality is prohibited by Minn. Stat. § 466.04, subd. 1(b).

Judge Nelson’s summary-judgment decision rejected the District’s argument that the punitive-damages claim should be stricken. She concluded that no motion was required under the circumstances, and even if such a motion were before the Court, it would be granted because the record indicated that Mr. Benner met the gatekeeping act’s evidentiary standard. [Mem. Opinion & Order at 70–71 & n.24, ECF No. 105.]

At this Court’s July 29, 2019 hearing on the motion addressed in this Order, counsel represented that they discussed the substance of Judge Nelson’s summary-judgment ruling regarding punitive damages. Defense counsel took the position that it remained an open question whether punitive damages were in the case for purposes of the Whistleblower Act claim and that a motion to amend the complaint was still required. Mr. Madia indicated that he sought to modify the scheduling order and amend the complaint out of an abundance of caution because of the District’s position and due to uncertainty about whether Judge Nelson’s statements regarding the gatekeeping statute’s evidentiary standard could be read to suggest that he still needed to file a motion.

## B.     The Good-Cause Standard

Based on this procedural history, the parties disagree whether there is good cause to allow Mr. Madia’s motion to amend the complaint to even be considered on its merits. When a

party moves to amend a pleading after the applicable deadline established in a scheduling order, Fed. R. Civ. P. 16 "requires the party to show good cause to modify the schedule." *Morrison Enterp., LLC v. Dravo Corp.*, 638 F.3d 594, 610 (8th Cir. 2011). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Id.* (quotation marks omitted). However, courts may also look to a number of other factors that consider the circumstances of a given case given the absence of a "clear test for when a party is diligent enough to establish good cause." *Shank v. Carleton College*, 329 F.R.D. 610, 614 (D. Minn. 2019) (citing *Portz v. St. Cloud State Univ.*, No. 16-cv-1115 JRT/LIB), 2017 WL 3332220, at *3–4 (D. Minn. Aug. 4, 2017)).

### C.     Discussion

To put it bluntly, the procedural history of this case is a bit of a mess when it comes to the issue of punitive damages. From that mess, however, it is clear that Mr. Benner could have acted more diligently and filed a motion to amend the pleadings to add punitive damages by the September 6, 2018 deadline, as his August 31, 2018 email suggests he contemplated. Nonetheless, for the following reasons, the Court concludes that there is good cause to allow consideration of the motion to amend the complaint now.

First, a fundamental underpinning of SPPS's position is that Mr. Benner was required to file a motion to amend the complaint pursuant to the gatekeeping statute. [Def.'s Mem. at 8 (including the heading: "Benner Was Required to Move to Amend to Assert Punitive Damages" and relying on § 549.191).] However, the Court is not writing on a clean slate here. Instead, the Court considers the issue of good cause against the backdrop of Judge Nelson's summary-judgment decision. Judge Nelson concluded that no such motion was required under § 549.191 because the surviving state law claim is premised on "supplemental jurisdiction, *not* on diversity

jurisdiction." [Mem. Opinion & Order at 70–71.] In its opposition memorandum to this Court, SPPS implies that Judge Nelson's analysis on this point is incorrect, and notes that the jurisdictional issue was not briefed. [Def.'s Mem. at 9 & 9–10 n.5 (citing *Ulrich v. City of Crosby*, 848 F. Supp. 861, 866 n.5 (D. Minn. 1994) ("[T]he prerequisites of Section 549.191 are equally applicable to State law causes of action which are litigate in the Federal Courts of Minnesota, irrespective of whether the Court's jurisdiction is invoked by the diversity of the parties['] citizenship or by the tenets of this Court's supplemental jurisdiction.").] Though SPPS is not explicit about doing so, it is asking a United States Magistrate Judge to reach a different conclusion on a legal issue already decided by the District Judge presiding over the litigation. To adopt the fundamental premise of SPPS's good-cause argument would require to the Court to either explicitly or implicitly adopt a conclusion directly at odds with one already reached by the District Court in the very same case. That would be an extraordinary result.

Second, the Court expressly finds that neither Mr. Benner nor his counsel have engaged in dilatory tactics or in conduct that can be described as "carelessness, neglect, or a litany of lame excuses," which would defeat his claim that there is good cause here. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 615 (D. Minn. 2019) (quotation marks omitted). Despite Mr. Madia's August 31, 2018 email to opposing counsel a motion to amend, he represented at the hearing that the motion was not filed because it appeared to him to be unnecessary. Indeed, the District twice stipulated to the filing of an amended pleading that included the Minnesota Whistleblower Act claim and a request for punitive damages. Although the District took pains in both stipulations to indicate that it was not foregoing any of its arguments about the viability of the substantive claims, it did not note any specific objection to the presence of the punitive-damages claim when the pleading added the state law claim to the pre-existing federal claims. Nor did it insist on the

filing of the motion to amend. When the defense counsel responded to Mr. Madia's August 31, 2018 email and took the position that a motion was required by the gatekeeping statute, this could perhaps be understood as an about-face from its approach to the stipulations,[1] even if Mr. Madia may have believed at some point that a motion was necessary. At the hearing, Mr. Madia reasonably explained that after the August 31, 2018 email exchange, he concluded it would be unnecessary for him to file a motion to amend in light of the fact that a general request for punitive damages was already in the Third Amended Complaint alongside the state law claim.

Even if Mr. Madia were incorrect and a motion to amend were required, an issue which the Court need not resolve here, the Court would still find that the failure to do so by the September 6, 2018 deadline does not negate a finding of good cause. The reality is that Mr. Madia's conclusion may be reasonable based on the analysis conducted in recent decisions applying *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), and examining the potential conflicts between § 549.191 and various provisions in the Federal Rules of Civil Procedure. *See Rogers v. Mentor Corp.*, No. 12-cv-2602 (SRN/SER) 2018 WL 2215519, at n.16 (D. Minn. May 15, 2018) (noting that the gatekeeping statute's prohibition on including punitive damages in an initial complaint may conflict with Fed. R. Civ. P. 8 and 9). The uncertainty in the law governing the pleading of punitive damages in federal cases in this District warrants some leeway when uncommon circumstances arise.

---

[1]     To be clear, the Court is not suggesting that defense counsel's behavior was inappropriate. It seems most likely, based on this record, that the issue of punitive damages was not in the forefront of defense counsel's mind when the stipulations to amend the complaint were negotiated.

Finally, the District characterizes Mr. Benner's failure to file his punitive-damages motion before the non-dispositive motion deadline as a strategic choice he now regrets, but with which he must live. [Def.'s Mem. at 5, ECF No. 118.] The sharp edge of this criticism is dulled by the District's own attempt to raise a new argument now, even though it could have raised it at summary judgment. As noted, the District's new argument posits that it cannot be held liable for punitive damages under the Minnesota Whistleblower Act based on the exception to municipal liability under Minn. Stat. § 466.04, subd. 1(b). [Def. Mem. at 18–25.] This argument appears nowhere in the District's summary-judgment briefing even though the District sought a ruling that punitive damages could not be recovered as a matter of law. The District offers no reason here to suggest that this argument was unavailable to it at the time its summary judgment brief was due. The only possible excuse for this failure is that the District chose to focus its attention on the reasons it believes Mr. Benner's substantive claims must fail.[2] The upshot is that the District made a strategic choice not to raise the immunity argument at summary judgment, but seeks to raise it now in spite of that choice. Excluding the plaintiff's punitive-damages claim on procedural ground under these circumstances would essentially excuse the District's own failure to act with diligence while forcing Mr. Benner to pay for his. That would be contrary to the Court's responsibility to administer the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

---

[2]     In its briefing the District indicates that it decided not to address errors in Mr. Benner's response to the summary-judgment motion concerning punitive-damages pleading requirements because of the word-count limitations imposed by the Local Rules. [*See* Def.'s Mem. at 6 & n.4.] The record contains no request under Local Rule 7.1(f)(1)(D) that the word-count limitations be enlarged so that it could fully explore the issues. Moreover, opting to forego a legal argument to focus attention elsewhere is itself a commonly made strategic choice, but a choice nontheless.

For these reasons, the Court concludes that there is good cause to permit consideration of the motion to amend the complaint at this late stage of the proceedings.

## II.        Motion to Amend the Complaint

Rule 15[3] of the Federal Rules of Civil Procedure provides, in relevant part, that a motion to amend should be granted freely when justice requires. Fed. R. Civ. P. 15(a)(2). Despite this liberal policy of allowing amendments, a motion to amend may be denied for several reasons. *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (listing "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment" as reasons to deny leave to amend). Only futility of amendment is relevant here. A proposed amendment is futile when it would not survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).

Mr. Benner's proposed amendment would have him file a Fourth Amended Complaint with the only changes appearing in the name of the pleading's caption and in the prayer for relief's indication that he seeks punitive damages "(for all claims)." [ECF No. 115-2.] The parties agree that the effect of the proposed amendment would clarify that Mr. Benner is seeking an award of punitive damages against SPPS on his surviving claim for retaliatory discharge under the Minnesota Whistleblower Act. SPPS asserts that Mr. Benner's Whistleblower Act claim is "tort" claim and that it cannot be held liable for punitive damages based on the Municipal Tort Claims Act ("MTCA"), Minn. Stat. § 466.04, subd. 1(b). The Court will briefly

---

[3]        The District does not argue that the Court should apply the evidentiary standard imposed by the gatekeeping statute and only cites to the amendment standard under Rule 15. [Def.'s Mem. at 18.] Therefore, the Court need not discuss the recent developments in the law governing application of Minn. Stat. § 549.191 and assumes that Rule 15 standards apply here.

discuss the most relevant provisions in these two Minnesota statutes before turning to the analysis of the parties' competing views.

### A. Relevant Statutory Provisions

The parties' dispute centers around the interaction between the provisions of two different statutes, the Whistleblower Act and the Municipal Tort Claims Act ("MTCA"). The Whistleblower Act prohibits an employer from, among other things, terminating an employee for making a good faith report of any suspected violation of federal or state law.[4] The statute does not explicitly state that punitive damages are available, but its remedial provision is quite broad. Section 181.935 provides that an employee who is "injured by a violation of [the Whistleblower Act] may bring a civil action to recover any and all damages recoverable at law…." Minn. Stat. § 181.935(a).

The Municipal Tort Claims Act ("MTCA") "generally allows governmental entities … to be held liable for their torts subject to certain exceptions and limitations." *Watson by Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 412 (Minn. 1996); Minn. Stat. § 466.02 ("[E]very municipality is subject to liability for its torts…."). Pursuant to section 466.01, subd. 1, the

---

[4]     Mr. Benner's retaliatory discharge claim falls under the following substantive provision of the Whistleblower Act:

An employer shall not discharge, discipline, threaten, … or penalize an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:

(1) the employee … in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official….

Minn. Stat. § 181.932, subd. 1(1).

MTCA is applicable to tort claims against a school district like SPPS. However, with respect to tort claims against municipalities, the MTCA provides that "[n]o award for damages on any such claim shall include punitive damages." *Id.*, § 466.04, subd. 1(b).

## B. Analysis

The question raised is one of first impression. Because there is no precedent directly on point, both sides have directed the Court to analogous case law they believe supports their positions. Ultimately, the issue here is one of statutory interpretation, the goal of which is "to effectuate the intent of the Legislature." *Friedlander v. Edwards Lifesciences, LLC*, 900 N.W.2d 162, 164–65 (Minn. 2017); Minn. Stat. § 645.16. When the Minnesota "Legislature's intent is clear from the unambiguous language of the statute,' [courts] apply the plain meaning of the statutory provision." *In re Schmalz*, ___ N.W.2d ___, 2019 WL 3770834, at *3 (Minn. Aug. 12, 2019). "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Burt v. Rackner, Inc.*, 902 N.W.2d 448, 452 (Minn. 2017) (quoting *Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013)). For the reasons that follow, the Court concludes that the MTCA's prohibition on punitive damages awards against a municipality does not apply to retaliatory discharge claims under the Whistleblower Act. Accordingly, Mr. Benner's proposed amendment is not futile and his motion to amend is granted.

### 1. The MTCA Does Not Unambiguously Apply to Claims under the Whistleblower Act

The language of the MTCA does not offer a clear and unambiguous answer to the issue in this case. Section 466.04, subd. 1(b), prohibits an award for punitive damages against a

municipality for "any claim within the scope of" the MTCA.[5] The MTCA provides that, subject to certain limitations, "every municipality is subject to liability for its torts…." Minn. Stat. § 466.02. But the MTCA does not define the term "torts." On its own, the term "tort" does not unambiguously indicate legislative intent that the MTCA applies to statutory employment claims like Mr. Benner's.

SPPS suggests that the plain and ordinary meaning of "tort" encompasses a Whistleblower Act claim. [Def.'s Resp. at 22.] The District points to the description of "tort" in *United States v. Burke*, 504 U.S. 229, 234 (1992), which notes that "[a] 'tort' has been defined broadly as a 'civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages.'" The Minnesota Court of Appeals has discussed the meaning of "tort" in similar terms when analyzing the MTCA. *Pigs R Us, LLC v. Compton Twp.*, 770 N.W.2d 212, 215 (Minn. Ct. App. 2009) (citing *Black's Law Dictionary* 1526 (8th ed. 2004) for the proposition that a tort is "a civil wrong ... for which a remedy may be obtained, usu[ally] in the form of damages," and rejecting a claim that the MTCA protected a township from an award of damages in a mandamus action). That definition does not, however, clearly explain whether claims created by a statute are included. The latest edition of Black's Law Dictionary has twenty-one separate entries under "tort,"[6] but none of them discuss a "statutory tort." It strikes the Court as unlikely that the Minnesota Legislature intended the term "tort" to include claims created by statute without a more explicit statement.

---

[5]     Section 466.04, subd. 1(b) refers to "any such claim," which is a reference to the language in subdivision 1(a) concerning the limits of municipal liability for "any claim within the scope of sections 466.01 to 466.15...."

[6]     *Black's Law Dictionary* 1717–18 (10th ed. 2009).

Perhaps recognizing that the dictionary definition of "tort" does not make it clear that the MTCA applies to statutory claims, the District argues that the Minnesota Supreme Court recognizes the principle that the Minnesota Legislature can create a "statutory tort." [Def.'s Mem. at 22–23.] The District argues that any such statutory tort is necessarily subject to the Municipal Tort Claims Act and its prohibition on recovery of punitive damages from a municipality. [*Id.*; Def.'s Letter, ECF No. 124.]

In support of this argument, the District relies on *Abraham v. Hennepin County*, 632 N.W.2d 342 (Minn. 2002), *Schmitz v. U.S. Steel Corp.*, 852 N.W. 2d 669 (Minn. 2014), and *Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683 (Minn. 2013). In *Abraham* and *Schmitz*, the Minnesota Supreme Court addressed whether the plaintiffs had a right to a jury trial under the Minnesota Constitution for certain statutory causes of action. *Abraham*, 639 N.W.2d at 345–46 (considering whether a plaintiff has a right to a jury trial for a retaliatory discharge claim under the Whistleblower Act); *Schmitz*, 852 N.W.2d at 670–71 (considering whether a plaintiff has a right to a jury trial for a retaliatory discharge claim under the Workers' Compensation Act). The court found such a right under the state constitution in both cases. In a passage explaining its reasoning, the *Abraham* court stated that a Whistleblower Act retaliatory-discharge claim "sound[ed] in tort," making it a cause of action "at law" for which there exists a constitutional right to a jury trial. 639 N.W.2d at 352–54. In *Schmitz*, the court relied on its reasoning in *Abraham*, specifically noting that it had compared the Whistleblower Act retaliatory-discharge claim to a tort. 852 N.W.2d at 674–77.

In *Sipe*, the Minnesota Supreme Court held that claims under the Drug and Alcohol Testing in the Workplace Act, Minn. Stat. § 181.953, subd. 10, are governed by the six-year statute of limitations for claims created by statute rather than the two-year period for torts

resulting in personal injury. 834 N.W.2d at 687–88. The *Sipe* court characterized an earlier case involving a similar issue as "considering whether a tort *created by statute*" was subject to the two-year or six-year limitations period. *Sipe*, 834 N.W.2d at 687 (emphasis in original) (discussing *McDaniel v. United Hardware Distributing Co.*, 469 N.W.2d 84 (1991)).

Though these cases include language comparing certain statutory claims to intentional torts, the MTCA was not at issue in any of them. Neither *Abraham*, *Schmitz*, nor *Sipe* considered whether statutory claims, which could be characterized as "torts" because they prohibit conduct intended to injure another, are necessarily "torts" within the meaning of the Municipal Tort Claims Act. The District does not point to any case where a statutory claim has been interpreted to be a "tort" for purposes of the MTCA, and the Court has found none. Accordingly, even if the District is correct that torts "may be created by a legislature,"[7] it has pointed to no authority that convinces this Court that the Minnesota Legislature intended the MTCA's provisions to apply to so-called "statutory torts" like the Whistleblower Act. Indeed, two decisions from this court have suggested that the MTCA does not apply to statutory claims. *Yernatich v. St. Louis Couny*, No. 11-cv-978 (PAM/LIB), 2011 WL 3274088, at *2 (D. Minn. Aug. 1, 2011) ("The notice requirement of section 466.05 only applies to state-law torts, not to federal claims or claims based on state statutes."); *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F.Supp.2d 1081, 1101 (D.Minn. 2000) (same).

Based on the foregoing, the Court concludes that the MTCA does not explicitly answer whether statutory claims under the Whistleblower Act fall within its scope. It could be read to apply to all manner of claims against a municipality, including statutory claims like Mr. Benner's. It could also be read to apply only to common-law tort claims, such as claims

---

[7]     Def.'s Mem. at 22.

based on the negligent acts of the municipality or its agents. For the reasons discussed above, the Court concludes that the more reasonable reading is that the Minnesota Legislature did not intend for the MTCA to apply to Whistleblower Act claims. This conclusion is further supported by the language and purpose of the Whistleblower Act.

### 2. The Whistleblower Act and Punitive Damages

The Whistleblower Act includes a remedies provision that is broad enough to include punitive damages, allowing a plaintiff to recover "any and all damages recoverable at law." Minn. Stat. § 181.935(a). When other Minnesota statutes have used the same or similar broad remedial language, courts have concluded that punitive damages are recoverable. For instance, in *Bucko v. First Minn. Savings Bank*, 452 N.W.2d 244 (Minn. Ct. App. 1990), the Minnesota Court of Appeals considered a statute prohibiting employers from requiring their employees to take polygraph tests and held that the remedial provision providing for recovery of "any and all damages recoverable at law" authorized an award of punitive damages. *Id.* at 248.[8]; *see also Belsky v. Worldwide Parts and Accessories Corp.*, No. 04-cv-4702 (JRT/FLN), 2006 WL 695531, at *3–4 (D. Minn. Mar. 17, 2006) (finding that punitive damages are available under the Minnesota Drug and Alcohol Testing in the Workplace Act because the statute "uses broad language authorizing damages" providing for "any damages available at law" and citing *Bucko*). These cases support a conclusion that the Minnesota Legislature similarly intended punitive damages to be recoverable for Whistleblower Act violations.

---

[8] The decision in *Bucko* was reversed on other grounds, but the Minnesota Supreme Court did not disturb the Court of Appeals' conclusion that punitive damages were available under the statute and reinstated two punitive damages awards from the district court's judgment. *Bucko v. First Minn. Savings Bank*, 471 N.W.2d 95. 97–98 (Minn. 1991).

### Morrow v. Air Methods, Inc.

SPPS does not disagree that punitive damages are generally available for violations of the Whistleblower Act, but relies on *Morrow v. Air Methods, Inc.*, 884 F. Supp. 1353 (D. Minn. 1995), to support its position that the MTCA prohibits an award of punitive damages against it. Based on *Morrow's* rationale, SPPS asserts that: (1) punitive damages are only available under the Whistleblower Act because the statute is indistinguishable from an intentional tort; (2) Whistleblower Act claims are, therefore, "torts" within the meaning of the MTCA; and (3) as a result, the MTCA's prohibition on awards of punitive damages against a municipality applies to a claim under the Whistleblower Act. [Def.'s Mem. at 20–21.] In *Morrow*, the plaintiff alleged that he was fired in violation of the Whistleblower Act,[9] because he refused to follow instructions that would have caused him to violate federal safety standards. *Id.* at 1355. The *Morrow* court described his statutory claim as one for "wrongful discharge in violation of public policy." Mr. Morrow sought leave to add a claim for punitive damages, and his employer, Air Methods, argued that the Whistleblower Act did not allow for recovery of punitive damages because § 181.935(a) did not "explicitly refer to punitive damages." *Id.* at 1356. The Court rejected this argument based on the following reasoning:

> Because the act does not explicitly refer to punitive damages, Air Methods asserts that a violation of the statute does not provide a proper basis for an award of punitive damages…. The court disagrees. Section 181.932 codified the existing common law tort of wrongful discharge in violation of public policy. Compensatory and punitive damages are generally permitted for intentional torts. While the statute does not explicitly refer to "punitive damages" it does provide for the recovery of "any and all damages recoverable at law." Minn. Stat. § 181.935(a). Legal relief is commonly understood to include compensatory and punitive damages. There is no indication that the Minnesota legislature intended to restrict the common law remedies when it enacted the whistleblower statute. As

---

[9]   *Morrow* refers to the plaintiff's claim as arising under Minn. Stat. § 181.932, subd. 1(c). Former subdivision 1(c) has since been renumbered. *See* Minn. Stat. § 181.932, subd. 1(3).

plaintiff's counsel notes, while the legislature could have been more precise it is hard to imagine a broader grant of remedies.

*Id.* at 1356–57.

For several reasons, *Morrow* does not compel the conclusion the District asks this Court to reach. First, *Morrow* did not involve a municipal employer and the court did not address the applicability of the MTCA. This makes it difficult to extrapolate a clear connection between the Whistleblower Act and the MTCA from the *Morrow* court's reasoning. Moreover, the Court is not persuaded that *Morrow* establishes that punitive damages are only available under the Whistleblower Act because the statute is indistinguishable from an intentional tort. This premise ignores cases like *Bucko* and *Belsky*, which do not rely on a comparison to common-law intentional torts to find that punitive damages are available under various statutes' broad remedial language. As importantly, the *Morrow* court's discussion of intentional torts is tied to the specific Whistleblower provision at issue—former section 181.932, subd. 1(c). The *Morrow* court made clear that this subsection codified a pre-existing common law tort of wrongful discharge in violation of public policy. But other provisions of the Whistleblower Act for which punitive damages are also available, including the provision at issue here, have no common-law tort counterparts.[10] However, taking the District's reading of *Morrow's* reasoning to its logical conclusion would mean that punitive damages were only available when the provision violated

---

[10]     Other courts have relied on *Morrow*, albeit without much analysis, for the proposition that punitive damages are available for violations of the Whistleblower Act, including for violations of the paragraph at issue in this case. *Korbel v. Extendicare Health Servs., Inc.*, No. 13-cv-2640 (SRN/SER), 2015 WL 13651194, at *2 (D. Minn. Jan. 22, 2015) (punitive damages "may be awarded in cases alleging violation of the Whistleblower Statute."); *Esget v. Adecco USA, Inc.*, No. 12-cv-2164 (RHK/AJB), 2012 WL 4856302, at *1 n.1 & n.3 (D. Minn. Oct. 12, 2012) (citing *Morrow* while noting the absence of a dispute regarding recoverability of punitive damages); *Hammond v. Northland Counseling Ctr., Inc.*, No. Civ. 5-96-353 (MJD/RLE), 1998 WL 315333, at *9 (D. Minn. Feb. 27, 1998).

in the Whistleblower Act corresponds to a cause of action that existed at common law. This would result in a patchwork application of the broad remedial provision in Section 181.935(a) that has no support in the text or structure of the Whistleblower Act.

### *Explicit Application to Municipalities*

A final consideration supports the Court's conclusion that the MTCA's prohibition on recovery of punitive damages from a municipality does not apply to Whistleblower Act claims against a municipal employer. The Whistleblower Act does not explicitly exempt municipal employers from any form of recoverable damages, despite the Act's express provision that it applies to municipalities. Minn. Stat. § 181.931, subd. 3 (providing that an "employer … includes the state and any political subdivision of the state"). If the Minnesota Legislature intended to limit an employee's right to recover a subset of "any and all damages recoverable at law" against a municipal employer, it could certainly have said so in the text of the Whistleblower Act itself. It did not choose to do so. Indeed, the Legislature adopted such a direct path to limiting recovery of punitive damages when it passed the Minnesota Human Rights Act ("MHRA"). The MHRA provides a right for an aggrieved person to file a civil action for violations of several substantive provisions. The MHRA applies to political subdivisions, but explicitly limits the ability of a plaintiff to recover punitive damages of greater than $25,000 "[i]n any case where a political subdivision" is the defendant. Minn. Stat. § 363A.33, subd. 6; Minn. Stat. § 363A.29, subd. 4(b). The absence of similar limiting or prohibiting language in the Whistleblower Act should be given weight. And, although the Whistleblower Act was enacted many years after the MTCA, the Whistleblower Act neither refers to the MTCA's provisions, nor describes the unlawful employment practices it prohibits as "torts" for purposes of applying the MTCA's provisions to claims against municipal employers.

Although this is a difficult question, for the reasons explored, the Court finds that the Municipal Tort Claims Act does not prohibit an award of punitive damages for a claim under the Minnesota Whistleblower Act against a municipal employer.

**III.     Conclusion**

**IT IS HEREBY ORDERED THAT** Mr. Benner's motion to amend the scheduling order and to amend the complaint [ECF No. 112.] is **GRANTED**. Mr. Benner shall promptly file his Fourth Amended Complaint.

Date: August 20, 2019                                   *s/Katherine Menendez*
                                                                    Katherine Menendez
                                                                    United States Magistrate Judge